May it please the court, Mr. Wild, my... Your Honor, do we deserve any time for rebuttal? Yes, Your Honor, I want to reserve three minutes for rebuttal. All right, go ahead. Your Honor, Mr. Wild is an author, he's a comic book author, and authored a three book series of comic books called Carnival of Souls. And in that series, it has a dark carnival theme, and expressed in a certain way. And Mr. Wild spent ten years getting that published, and was actually quite successful with his comic book. He became a Nokia success story, and was the number one book on BlackBerry. In fact, he was the only comic book on BlackBerry devices, which was unique at the time. This case arose when the defendants, with a high degree of access, began using, in season four of Heroes, a similar carnival theme, basic plot, but with many parallel characters. Is the degree of access, is that really in dispute here? Or are we more focusing on the similarities? The degree of access is only in dispute to the extent that the court assumed access, but did not consider that there was a high degree of access, and therefore applied a higher standard for the required similarity than the lower standard required with a high degree of access. Now this was dismissed at the pleading stage, correct? Yes, it was. So are you suggesting that there's a categorical rule precluding a district court from dismissing a copyright case at the pleading stage, based on lack of substantial similarity? A categorical rule? Right. Because a lot of cases are at summary judgment, but I think there is an old case. There's a very old case, Your Honor. Thank you. Forty-five case, nine complatings. Yes. The only case that I was able to find in the Ninth Circuit was the Christensen case, and that involved basically a map. And the only thing about the map that the plaintiff didn't even claim that the copied features of the map were protected. That was a very simple case, and it was resolved on a motion to dismiss. But that has never been overruled, right? Pardon me? That has not been overruled, so that's still good law. That is still good law in the sense that it is, well, it has been criticized by this court and distinguished on the case. I criticize cases here, too, but that doesn't mean I don't have to follow them. I mean, we still have to follow our precedent. The fact that it was, it happened in one case with a very simple map doesn't mean that it was appropriate in this case with very complex, surreal fantasy works that require quite a bit of analysis. Well, let me ask you this, though. Let's just assume the high degree of access on the substantial similarity and assume that we watched all the episodes that were submitted. And you seem to be saying that why it shouldn't be granted is because you need an expert. How is someone going to be more expert than we are at looking at and comparing for substantial similarity? Your Honor, the issue of the expert is really, it's part and parcel and perhaps the flip side of the same coin as the denial of leave to amend. The court found the allegations deficient, but didn't allow leave to amend. Well, did you? I'm sorry, Your Honor? I'm sorry. Finish what you were saying. We've got a slight time delay. Finish what you were saying, and then I have a question. All right. Because it was dismissed without leave to amend, all of the arguments, as it were, the facts that were presented showing errors in analysis, omissions in analysis by the district court, were not allowed to be alleged in an amended complaint. And so that does lead to my question, so let me interrupt you now. Yes. A motion to dismiss was filed, correct? Yes, Your Honor. Did you submit a proposed amended complaint? No, Your Honor. We requested leave to amend in the response, and the authorities showed that that is sufficient to preserve that right. The defendants, on the other hand, objected to amendment of the complaint or conversion to a summary judgment motion. Well, but I've read, and I want to ask you about both of those things. I've read your response, and it simply requests leave to amend. Does it tell the district judge what an amended complaint would have said? No, Your Honor, it didn't do that. And we don't know what an amended complaint would have said either, do we? We don't, although I believe you probably have a lot of the arguments and the factual allegations that would have been in an amended complaint here in the briefing on appeal. Let me ask you. I have the same question. Thank you, Judge Callahan. I'm getting a little dry here, too. I am, too, so maybe the answers are better than when they started. My question on the summary judgment is the same. When you asked the court to convert this to a motion for summary judgment, was there any indication given to the district court of what you would have filed, what an expert might have said, had this been a summary judgment motion? Your Honor, we never saw the inside of the courtroom. And whether the judge was not permitting anything to be added to the pleadings. We had requested that it be converted to a motion for summary judgment, and the defendants had opposed that. And so the hypothetical question that you're posing, that is, why didn't we present all of this additional material at the time, is because it was a motion to dismiss, and at the time we thought the allegations were sufficient. And if they weren't sufficient, given the liberality with which amendments are permitted, we had thought that amendment would be permitted to allege all of the similarities, the parallel characters, the additional parallelism between the plot lines. But we were never given that opportunity. Excuse me. My question, though, was the allegations in the complaint were that this one work, which the district court had in its entirety before it, infringed this other work, which it also had in its entirety. And the district court said, I have reviewed both works, and I say there's no substantial similarity. So it didn't seem, based on that allegation, that there was room to amend, that something else could have been said because all of the works were there. And in your blue brief, there was one sentence or a couple of sentences that said, well, maybe we could have alleged that your storyboards infringed the comic book. But isn't that a completely different theory of relief, a different infringing element? Your Honor, actually, that brings up a good point, because one of the arguments that we made at the district court level, which was really never addressed in the opinion, is the graphical similarity. That is, there are many instances of scenes that were taken, important scenes, that were taken from the comic book series and used with similar lighting, similar character placement, similar camera angles as images that appeared in the comic. And that was never addressed by the district court at all. And you provided that to us, these comparisons, but those were part of the creative works that were before the district court, correct? They were before the district court, but they were never addressed at all in the opinion, finding that there was a lack of similarity. Well, the court didn't get to it. The court denied relief on the other basis. But let me ask you this. It seems to me, on your storyboarding, the court didn't get to that. But would an expert make any ‑‑ I'm inclined to think that I can look at, compare the DVDs to all the written work as easily, but with storyboarding, would an expert make a difference more than in the other analysis? Yes, Your Honor. Well, tell me how and tell me why you didn't put that forward. Your Honor, an expert would make a difference. As I explained before, the reason we didn't put it forward is because it was a motion to dismiss. There was no opportunity to do that. And the expert would make a difference in terms of explaining to the court the importance of the camera angles, viewing upwardly over the left or right shoulder of one of the characters with back lighting, dark backgrounds. For example, in the case of the riflescope scene, the background is black around both of the riflescopes. It doesn't have to be black. It could have been clear. It could have not been there. But it is black in both of the accused. So the claim is that frames from the comic book could be compared to these frames from the show, and an expert could have pointed out similarities. Is that what you're alleging? Yes, Your Honor. In that sense, in that part, that's correct. And although when one watches the show that's already made to the viewer, it seems like a freeze frame. But in the production of the show, the common process is to make storyboards. It would show this is the scene. This is a sketch of it. Now, are you also alleging that the frame from the comic book was infringed by the storyboard itself? We are contending that the show was produced by means of yellow-tagging pages on the comic book and saying that's a good scene, I like the way that looks, make this scene like that, to shortcut the making of the storyboards. So in other words, they used the comic book as a storyboard. As a storyboard. And we do have... So then would you depose people that were in the writer's room? Yes, we would, Your Honor. Is that what you would do to show that they used it as a storyboard? We would, Your Honor. And in fact, we had information that what they did is they yellow-tagged, that the producers yellow-tagged the pages of various comic books and told the writers and the producers, here, do it like this. We have evidence of that, but we were never able to amend the complaint to allege it. Is the recovery under the storyboarding theory as opposed to what we looked at on the substantial similarity, is there a difference in the recovery under those different theories? In terms of damages, Your Honor? Yeah. It may be, Your Honor, but again, we never got to that point. Well, let me ask that question more in a different way. Let's assume that the eventual TV series did not bear substantial similarity to the comic book, but that somewhere along the way a storyboard had been designed that didn't find its way into the TV series. Would you then have damages, assuming that the storyboard had been copied from your comic book? Your Honor, I believe we would still have at least recovery on a quantum-Merut basis or rather unjust enrichment. Whether we would actually have had a loss in that circumstance, I don't know. But again, because the complaint was disputed. Even if the eventual product was not substantially similar? Your Honor, we do believe that the final product was substantially similar, but yes. All right. But assume for one single frame there's infringement. Assuming it's hypothetical that we were to find it's not substantially similar, can you still recover on a storyboarding theory? Yes, Your Honor, we can. And I'd like to reserve the rest of my time. Did you want to follow up on that? No, that's fine. Thank you. Thank you, Your Honors. Good morning, Your Honors. Good morning. Are you going to split time or? No, notwithstanding Mr. Weiner's help all the time and his wisdom, I'm going to argue. All right. So tell us your name then. Yes. My name is Gail Teitel of Katten-Mueschen-Roseman, and I am speaking on behalf of the defendants' appellees in this case. May it please the Court, in a copyright infringement case, whereas here the lack of substantial similarity is patent from a review of the works themselves. I'm sorry. My voice is a little off. It is entirely proper for the district court to rule on that issue in the context of a 12B6 motion, as Judge Feist did here. And there is, I would submit here, no way that any reasonable person applying the factors in the extrinsic test could possibly find that these two works are capable of substantial similarity as a matter of law. Well, let me just sort of picking up on where we left off, and then you can come back to that. But if NBC copied images from plaintiff's graphic novels, like putting the stickies on them to create its storyboards, could the plaintiff amend his complaint to sue under an intermediate copying theory such as the theory in Sega Enterprises v. Acolloid? No, I don't think he can, Your Honor, because of a couple of reasons. First of all, I think that the implication that Judge Hurwitz made just now is absolutely correct. What you have to look at for substantial similarity is the works as produced. Are they similar or are they not? Well, but does it subsume it? Is it conceivable that there could be a storyboarding theory, even though that the end work was not substantially similar? Not in this context. There is no – oh, we're starting to repeat again the echo, but I'll try. Not in this context. What is the copyrighted work here? All right, go ahead. Stop for a sec. Okay. Just circling back to the question that the Court posed a minute ago, no, in this context, the storyboarding issue is really a red herring. First of all, as Judge Feist acknowledged, even if those who had written Heroes had had access to this work, and we're assuming for purposes of this motion to dismiss they did, and even if they had read it and looked at it and used it for inspiration, if at the end of the day the work that is being alleged to have infringed is not substantially similar to plaintiff's work, then there is no infringement. Now, could they have brought a claim? I didn't see that in their complaint, but they do refer to that at the end of their brief. Could they have brought a complaint that the storyboards themselves, if storyboards were created, that the storyboards themselves had infringed on the comic book? I mean, Walker said you could get statutory damages in that sort of case for the blueprints, even if they were never sold. Well, a couple things. First of all, they didn't allege that. They did not copyright these storyboards, their work, picture by picture. They copyrighted works in their entirety. Second of all, a storyboard, I would submit, is not going to be substantially similar to their work. Right, but isn't that different on a 12B6? Because I'm not, you know, I can look at the final work. I can look, and I've got all the pictures. I can look at all the renderings of the comic. But I can't put myself in the writer's room. I can't put myself with storyboards up on stickers on it, and probably I may not have the same expertise of the backlighting and all of that. So is that a feasible leap to amend situation is what I guess we're asking. I don't believe so, and for a number of reasons. First of all, there is a submission in opposition to the motion to dismiss of storyboards. They were available and reviewed by the court, and I think if you look at what they submitted as storyboard comparisons, you do not need to know one thing about backlighting. First of all, we're talking about a picture. We're not talking about backlighting. We're talking about two images on paper. Are you talking about the storyboard with the drawing of the man in the Hall of Mirrors? That's one of them that I'm talking about, yes. And if you look at that and say, well, that was a storyboard that, as plaintiffs would allege, presumably, was taken from the comic book, there's absolutely no substantial similarity in any way between those two. The whole issue about the backlighting and all, while the court may not be as comfortable about that, what we are looking at here is two two-dimensional images. A storyboard is a two-dimensional image, and you can look at that compared to a graphic image in the plaintiff's work, and you can tell without any question that there is no substantial similarity in these two works. So I just want to let you know that the case that you're relying on to deal with this, that a motion to dismiss, is Christensen, right? Well, I am relying on Christensen, which is still good law, as Judge Akito pointed out. But it's map to map as opposed to comic book to DVD. Yes. But in addition, there have been decades of district courts ruling in the context of a 12b6 motion on a comparison of two works. That was true, I believe we cited probably a half a dozen at least in our brief, and I can point them out to you. There were two cases involving the movie Cars and screenplays, and both of those were ruled on on a 12b6. There was Zella. Pardon? Whether or not those district courts were correct or incorrect. I can't hear you. We're not hearing you well. Can you hear me? Yes, a little. Okay. Now, okay. Whether or not those district courts were correct or incorrect in the context of those cases, hasn't this Court said on any number of occasions since 1945 that when implying the extrinsic test, district courts ought not do it at the pleading stage, but rather move on to summary judgment? I don't – I am not aware of that, Your Honor. I am aware of the fact that in a vast majority of cases when you are addressing it, whether you're addressing the issue of substantial similarity on a 12b6 or a motion for summary judgment, what the Court is doing is going through the extrinsic analysis and applying it to the literary works before it. That has been done over and over, and this Court in cases like Funky Films has said no matter how much discovery is allowed or how much access is allowed proof of, if the works themselves are not substantially similar, then the case should be terminated. And the Court has also said and distinguished between musical cases and literary works that judges are particularly skilled in addressing the kinds of issues that you have to address in literary works. So I don't think that it matters whether it's in the context of a 12b6 or a motion for summary judgment. If the two works are not substantially similar as a matter of law, then the Court is perfectly capable of dismissing it. And I would submit that where you have cases such as this one where the absence of substantial similarity is patent, it is really unfair to the defendants to be subjected to going through the time and burden and expense of reaching a motion for summary judgment stage when we know from the get-go there is simply no substantial similarity as a matter of law between the works. And try as they might, the plaintiff and his counsel simply cannot find any kind of substantial similarity that is meaningful. I mean, we are confronting a situation where the plaintiff is alleging that the two characters, Jason and the Dexter the Clown, are substantially similar because they both lost their mothers at a young age, totally ignoring the fact that one's mother died in a plane crash and the other mother, he killed his mother. I mean, these kinds of abstractions to meaninglessness that you get in the contentions that are both in the allegations of the complaint and in the briefing are simply not viable as a basis for finding that there could be any issue with respect to substantial similarities. The plaintiff, and to address the issue of no offer of proof, the plaintiff has had ample opportunity to present argument both in the district court and in this Court. And I must admit he's taken the ---- Are you arguing that the plaintiff waived the argument that NBC infringed his work based on the alleged visual or graphical similarity? Yes. That is another argument, Your Honor. Well, you're arguing it now. Did you argue it in your brief, that they waived it? I don't think they raised it. What we argued in our brief is that it was relevant only to the ---- Well, they talk about storyboarding in their brief, don't they? Yes. And we talk about the fact that the storyboarding, and I believe I don't have the page number. It's somewhere toward the end of the brief. We point out that the manner in which they raise the issue of storyboarding only goes to the issue of access and independent creation. So you don't argue they waived the issue, though? I don't. I guess we don't specifically argue that they waived the issue. But I think they waived the issue as a matter of law because they did not sue on a separate copyrighted work that was substantially similar to one of our works. So they sued based on their claim, and again, an oral argument. Their claim is about the program, the 19-hour Season 4 program. Yes. And they seem to be relating discussing storyboards and the like as more evidence that there was a connection between the comic book and the program. And I don't hear them making an argument about an intermediate infringement. Correct, Your Honor, which is why we didn't address that. Their argument that they did do it. Let me ask you the question again about it because I'm not sure I'm clear about your answer. Can you hear me okay now? Yes, I can. Let's assume for just purposes of discussion that people at NBC copied parts of the comic for their storyboards, but that there were people smart enough to realize before the show was produced that you shouldn't incorporate those storyboards into the show. Just assuming those facts to be true, is there a claim for copyright infringement stated into those facts? I don't think so because we don't have the work being published or disseminated or, I think, I mean, assuming that they had sued on a work which was an image, which they had separately copyrighted, and assuming that we had copied that and those were two separate works, then I suppose theoretically, depending on what was done with it, in some abstract fashion, perhaps they could do that. But that's not what we have here. They are suing on a work and saying that our work infringed that work. And if they were allowed to proceed under this new theory, what you're really doing is undermining the whole notion in the Ninth Circuit since Litchfield that random similarities cannot form the basis for copyright infringement. That's what we're doing here. We're taking a random similarity from 13 hours of television here with a random similarity over here and saying, aha, now we have a copyright infringement independently. And that is simply not the law and it's also not good policy. So in the comparison that they presented in their brief visual comparison, two of the images, I think, they compared an image from the comic book with an image from the graphic novel. Now, could they amend their complaint to allege copyright infringement via the graphic novel? I think that's another case, Your Honor. That's a different work and separately copyrighted. Well, but that's not quite answering Judge Akuta's question. Could they amend to allege? Could they amend to allege? Because everyone knows why we're in court. I mean, that's so that goes to the leave. It goes to whether there should be leave to amend allowed. I think that's a different set of facts. I think it's far removed and, therefore, there shouldn't be leave to amend. But on the other hand, it's also futile because if you looked at what they submitted in terms of pulling an image from the graphic novel and comparing it to an image in their work, and we have to assume that they have pulled the best they have, they are still not substantially similar as a matter of law. No reasonable person could find this garish clown image that they present looking like what they present as the counterpart, whether it's in the graphic novel, whether it's a still from the television show, regardless. This is a case that is simply without any merit. Judge Feist wrote a thorough 41-page opinion where he went through every element of the extrinsic test, where he addressed every purported similarity alleged by the plaintiff. And the plaintiff had ample opportunity. He pointed out what he thought were the similarities in his complaint. He pointed out what he thought were the similarities in his opposition. There is simply no there there. All right. Thank you for your argument. Unless the panel members have additional questions, I've allowed you to go a little over, and thank you for putting up with our... Thank you very much. You may proceed. Thank you, Your Honor. I want to address one thing very quickly in terms of the scope of protection of the copyright on the comic book. It does absolutely include the images, each one of the images. And I'm just quoting from Circular 44 of the Copyright Office. It says this protection extends to any copyrightable pictorial or written expression contained in the work. And that includes the drawings, pictures, depictions, et cetera. Now, if they used the comic book as storyboards, as we allege, but were never able to amend the complaint to allege, that would indeed be copyright infringement. And we've shown them a substantial similarity. What would be the copyright infringement? So if they had, they pulled a page out of the comic book, and they handed it to the cinematographer and said, or the director and said, use this. What are you saying is being, what is the infringing? It's a derivative work, Your Honor. Which is? That is. Because the page from the comic book isn't a derivative work. That's just. No, the show, the scene in the show is a derivative work of the comic book page. Okay, thank you. And that is, in fact, what happened. In fact, we have evidence that there were, for season four, they really didn't have time to make storyboards because they didn't know it was going to be renewed. So they, in fact, used comic books as storyboards. And that is indeed infringement, Your Honor. And it was found to be infringement in. Well, you know, for purposes of leap to amend, you still can file amended complaints saying what you would, you know, so that the court knows what you could have done. Or you can make offers of proof. Correct, Your Honor, but we never got to that point. And I would, I want, before I. You still could have prepared an amended complaint. We could have prepared an amended complaint, but the authorities show that that's not necessary. We've asked, we asked for a leap to amend. And the court should have said, go ahead. You have a leap to amend. Let's see what you produce. And, Your Honor, I want to point out very quickly on Christensen that it was decided prior to the extrinsic test and prior to the statements that expert testimony is appropriate. And so I'm really, I really don't believe that it is good law still after the creation of the extrinsic test. And I would also point out. But the Ninth Circuit, let me, let me call you on that. The Ninth Circuit, hasn't the Ninth Circuit frequently applied the extrinsic test to literary works without reference to expert testimony? They have, and they have also reversed on the basis of expert testimony in literary cases. So it's discretionary with the court. But here the discretion cannot be exercised without giving you an opportunity to present it in a procedural context where it's permitted. All right, thank you. That is the motion for summary. Thank you. Before everyone leaves, we've been having a fire drill issue the last couple of days, too. So thank you for your argument. This case will stand submitted.
judges: Callahan, Ikuta, Hurwitz